## FONTAINE & FREEMAN, use, &c. v. LEE'S ADM'RS.

1. The declaration alleged that the defendant's intestate, as a member of the firm of A L & Co, which was continued for the purposes of liquidation, but in other respects was dissolved, made a promissory note in their name, for the payment of a pre-existing debt of the firm, to the plaintiff: *Held*, that it could not be intended from the declaration, that the firm were liable to the payment of the note, but it imposed an individual responsibility upon the intestate, for which his administrator was suable.

2. Where a declaration contains *several* counts, to one of which a demurrer is sustained, and on the others issues are tried, and verdict and judgment thereon for the plaintiff; if the demurrer was improperly sustained, the judgment will be reversed *in toto,* and not merely as to the count adjudged to be defective.

WRIT of error to the Circuit Court of Sumter.

This was an action of assumpsit, at the suit of the plaintiffs in error against the defendants.

The declaration contains seven counts, the third of which is in the following words: "Also, for that said William Lee, in his lifetime, at Livingston, in said county, to wit: on the 26th day of June, A. D. 1837, as one of the firm of Abrahams, Lee & Co. which firm had before that time consisted of the said William Lee and others, and was then continued for the purposes of liquidation of the debts and demands of said firm, but had been otherwise and for other purposes dissolved, in and by the promissory note of said firm of Abrahams, Lee & Co. then and there made and given for a debt of said firm of Abrahams, Lee

112

& Co. then, and before that time due to said plaintiffs, promised said plaintiffs to pay them, or order, at the Planters' and Merchants' Bank of Mobile, where said note was negotiable, on the first day of March then next, the other sum of thirty-six hundred and twenty-three dollars and eighteen cents, for value received. The defendants demurred to this count, pleaded non-assumpsit, and payment to the others; and further, that the supposed promissory notes, in the plaintiffs' declaration mentioned, were never executed or delivered by their intestate, but that James A. Abrahams, of the firm of Abrahams, Lee & Co. executed these notes after the dissolution of the firm, and without the knowledge, consent or authority of the intestate, who has since deceased. This plea was duly verified by oath. The demurrer was sustained, and a verdict returned for the defendant on the pleas; on all which a judgment was rendered against the plaintiffs.

BLISS & BALDWIN, for the plaintiffs in error.
ROBT. H. SMITH, for the defendants.

COLLIER, J. J.—The only question raised by the assignment of errors is, whether the third count discloses a cause of action with which the defendant's intestate was chargeable when living, and which can now be enforced against them as his representatives. This count, it must be admitted, is unusual in point of form. Placing out of view so much as is said in respect to the continuance of the partnership, for the purposes of liquidation, and its dissolution for other purposes, and it charges that the intestate in his lifetime made the note therein described, in the name of Abrahams, Lee & Co. for a debt of that concern before that time due to the plaintiffs, and thereby promised to pay, &c. If the intestate was not authorized to make a note on behalf of the late firm of which he was a member, he could not bind them by such an act, yet he himself would be chargeable on such an engagement. In fact, it would be as much his note as if it was not signed in the firm name.

Without an authority for that purpose from his co-partners, a member of a partnership cannot, after its dissolution, bind them by a note or bill made professedly in their joint names. That is, if due notice has been given that their connection in business has

ceased. The fact that the note or bill has been substituted for a pre-existing debt of the firm, will not impart to it validity in law.

When a partnership is said to be dissolved for all purposes, except that of liquidation, we understand that it has ceased to do the business for which it was originally created; and that the only business in which it is engaged is that of *ascertaining, settling, adjusting and paying the debts of the concern.* Such is but the effect of every dissolution; it does not extinguish the debts, but the legal duty of the individual members of the firm to adjust and pay is still imperative. But in no case, as we have seen, are they severally authorized in virtue of their previous connection to make notes or draw bills that would be binding on all. There must be some new delegation of power, or such an act is invalid, except as to him who is the agent. In New York, it has been held, that if one partner, who is authorized to adjust the concerns of the partnership after its dissolution, settles an account, and acknowledges a balance to be due from the partnership, this acknowledgment will not bind his co-partner. [Hackley v. Patrick, 3 Johns. Rep. 528; Walden v. Shelburne, 15 Johns. Rep. 409; Hopkins v. Banks, 7 Cowen's Rep. 650; Baker v. Stackpole, 9 id. 433.]

In Sandford v. Mickels & Forman, [4 Johns. Rep. 224,] upon the dissolution of the partnership it was agreed that one of the partners should take the stock in trade, and collect and receive the outstanding debts and pay the debts of the partnership; yet it was held that this did not confer the authority to indorse notes, and that he could not use the name of his late firm in order to transfer the title of a note of which it was the legal proprietor. And in The Bank of South Carolina v. Humphreys, [1 McC. Rep. 389,] it was decided, that after a dissolution of a partnership, one partner cannot bind the other, by drawing a note in the partnership name, unless he has special power vested in him for that purpose: it is not enough that he be authorized to settle the partnership accounts. [See, also, Whitman v. Leonard, 3 Pick. Rep. 177; Whitaker v. Brown, 10 Wend. Rep. 75; 2 Phil. Ev. C. & H.'s notes, 173–4.]

From the view taken, it results that what is said in the count we are considering, of the continuation of the partnership for the purpose of liquidation, can have no influence in determining that the cause of action disclosed in it, is not enforceable against the

representatives of the intestate. If the partnership were liable upon the note, then the count might be bad, because it does not show that the intestate survived his co-partners, or that they, if living, are insolvent, &c. as the statute provides. But we can discover no substantial defect for which the demurrer should have been sustained.

It is insisted for the defendant in error, that even if the circuit court erred, yet the judgment should only be reversed in respect to the third count. Our practice has been in civil cases, where a judgment is erroneous, and cannot be here amended or rendered, to reverse it *in toto*, so as to place the parties in the precise condition in which they stood at the time the first error was committed. If the primary court overrules a demurrer to an entire declaration, or one or more of several counts, and an issue is tried and found for the plaintiff, the revising tribunal not only reverses the judgment on demurrer, but also that rendered upon the verdict: and this, although the several counts are, in point of fact, obviously founded upon distinct causes of action. The party who has been prejudiced by a decision against him, can only have the error repaired by such a practice. If he voluntarily proceeded to try the issue of fact, instead of seeking to correct the action of the court upon demurrer, then, perhaps, the plaintiff should not be allowed to insist upon a re-trial of the same issue; but he is not permitted to appeal or sue a writ of error until the entire cause is disposed of. In this view, it would seem but sheer justice that a plaintiff, at whose instance a judgment at law has been reversed, should be entitled to a trial *de novo*.

The analogy, which the counsel for the defendant in error has sought to establish between civil and criminal proceedings, cannot be maintained. The nature of prosecutions at the instance of the State; the rights secured to the accused by the humane provisions of the common law, and the guaranties of the constitution, all concur to show the striking impropriety of trying the second time for the same offence, one who has been already acquitted. To this it may be added, that there is not the same connection between public offences, as there is between private demands, which, for anything appearing to the contrary, may grow out of the same transaction.

A judgment at law in a civil cause, is an entire thing, and it is only that which is the final action of the court upon all the points

arising in the cause, that authorizes a writ of error. And whenever there is error in the proceedings which entered into and affected the disposition of the cause, the judgment is annulled, and if remanded, the case must be proceeded in, as if it had never been tried.

This brings us to the conclusion that the judgment of the circuit court must be reversed, and the cause remanded.